IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WILLIAM H. COSBY, JR.,            :    CIVIL ACTION
                                 :    NO. 16-508
       Plaintiff,           :
                                 :
    v.                          :
                                 :
AMERICAN MEDIA, INC., et al.,    :
                                 :
       Defendants.         :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    July 15, 2016


      This action arises out of a confidential settlement agreement signed more than a decade ago in a previous case before this court, <u>Constand v. Cosby</u> (No. 05-cv-1099). Plaintiff William Cosby brings claims of breach of contract and unjust enrichment against a number of parties to the settlement agreement, alleging that they have violated the agreement. All defendants have filed motions to dismiss. For the reasons that follow, the Court will grant several of the motions as they relate to claims involving voluntary disclosures to law enforcement officers, but will deny the remainder of the motions.

## I.   BACKGROUND

The Complaint alleges the following facts:

In 2005, Defendant Andrea Constand sued Plaintiff William H. Cosby, Jr., claiming that he drugged and sexually assaulted her at his Montgomery County home. In 2006, Constand also sued the National Enquirer for defamation over articles the publication had printed about Constand's allegations against Cosby.

Near the end of 2006, the parties settled both cases, pursuant to a Confidential Settlement Agreement ("CSA")[1] signed by Cosby; Andrea Constand; Gianna Constand;[2] American Media, Inc.;[3] Bebe Kivitz; Dolores Troiani;[4] and several other individuals who are not parties to the instant case. In the CSA, the parties agreed to a full settlement and release of all claims in exchange for financial consideration and mutual promises to keep information confidential. Those promises included agreements "not to disclose to anyone, via written or oral communication or by disclosing a document, in private or public, any aspect of this LITIGATION," including "the events or

---

[1]      The settlement agreement was private and was never presented to the Court for approval.

[2]      Gianna Constand is Andrea Constand's mother.

[3]      American Media publishes the National Enquirer.

[4]      Kivitz and Troiani represented Andrea Constand in the underlying cases.

allegations upon which the LITIGATION was based" and

"allegations made about [Mr. Cosby] or [Andrea Constand] by

other persons." Compl. ¶ 24.

Nearly a decade later, allegations against Cosby began

to attract widespread national attention. As a result, according

to Cosby, a number of the parties to the CSA took the following

actions:

- In early 2014, Andrea Constand said on Twitter, "I
  won't go away, there is a lot more I will say," and,
  "It's not that everybody just forgot about it, truth
  is nobody cared." Id. ¶¶  81-82.

- On December 1, 2014, the National Enquirer published
  an article entitled "Meet the Cosby Accusers!" The
  article discussed allegations against Cosby, including
  Constand's allegations. Id. ¶ 35.

- In July 2015, after the Montgomery County District
  Attorney reopened a criminal investigation against
  Cosby as to the events underlying Constand v. Cosby,
  Troiani provided the District Attorney with her files
  from Constand v. Cosby. She also informed the District
  Attorney of the CSA's contents. Id. ¶¶ 42, 44.

- Kivitz, Andrea Constand, and Gianna Constand also
  voluntarily disclosed information to the criminal
  investigators. Id. ¶¶ 47, 68, 74.

- In July 2015, after the Court unsealed some documents
  in Constand v. Cosby, court reporting service Kaplan
  Leaman & Wolfe ("KLW") released the full transcript of
  Cosby's 2005 deposition in that case to several
  entities, including news organizations. According to
  the Complaint, this occurred because Troiani and
  Kivitz either instructed KLW to release the
  transcript, or failed to use their best efforts to
  ensure that KLW complied with confidentiality
  provisions. Id. ¶¶ 51-55.

- In July 2015, Andrea Constand gave an interview to the _Toronto Sun_, during which she made statements about her allegations against and settlement agreement with Cosby. Id. ¶ 83.

- On July 22, 2015, the National Enquirer published an article entitled "99 Victims in 43 Years for Bill Cosby!" The article described allegations of sexual assault asserted against Cosby. It also described Cosby's 2005 deposition and noted that Constand v. Cosby had settled. Id. ¶ 33.

- On August 12, 2015, the National Enquirer published an article entitled "Bill Cosby's Sickening Attacks Behind the Scenes of 'The Cosby Show.'" The article discussed Cosby's 2005 deposition and other allegations against Cosby. Id. ¶ 34.

- On October 26, 2015, Constand sued former District Attorney Bruce Castor for defamation over statements he has made concerning the events underlying Constand v. Cosby. Kivitz and Troiani represent Constand in that suit (Constand v. Castor, No. 15-cv-5799). Id. ¶¶ 60-61.

- In October 2015, Kivitz and Troiani drafted and sent an "open letter to Bruce Castor" to the Philadelphia Inquirer. In the letter, Kivitz and Troiani discussed details of Constand v. Cosby. Id. ¶ 62.

- On January 4, 2016, the National Enquirer published an article entitled "Saved by the Bell Star Accuses Bill Cosby, Martin Lawrence, and John Travolta of Abuse." The article included descriptions of Cosby's 2005 deposition testimony. Id. ¶ 32.

- On January 6, 2016, the National Enquirer published an article entitled "World Exclusive: Bill Cosby Will Die in Jail." The article described the contents of Cosby's deposition and purported to include an interview with Andrea Constand. Id. ¶ 31.

Cosby alleges that all of these actions violated the CSA.

Cosby filed his Complaint on February 1, 2016, naming American Media, Troiani, Kivitz, Andrea Constand, and Gianna

Constand as defendants. ECF No. 1. The Complaint contains six

counts: one count of breach of contract against each defendant,

and one count of unjust enrichment against Andrea Constand.

Originally, portions of the Complaint were filed under seal, but

the seal has since been lifted. ECF No. 34.[5] All defendants have

filed motions to dismiss,[6] ECF Nos. 32, 36, 40, which are now

ripe for disposition.

## II.   LEGAL STANDARD

A party may move to dismiss a complaint for failure to

state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6). When considering such a motion, the Court must "accept

as true all allegations in the complaint and all reasonable

inferences that can be drawn therefrom, and view them in the

light most favorable to the non-moving party." DeBenedictis v.

Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal

quotation marks omitted). To withstand a motion to dismiss, the

complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007). This "requires more than

labels and conclusions, and a formulaic recitation of the

---

[5]      Cosby conceded that there was no reason to maintain a
seal over the Complaint or any other filings in this case.

[6]      American Media also filed a Motion for Leave to File a
Reply Memorandum, ECF No. 39, which the Court will grant.

elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

Three motions to dismiss are pending in this case: one by Kivitz and Troiani, one by American Media, and one by Andrea and Gianna Constand. Each contends that Cosby has failed to state claims for breach of contract; Andrea Constand also argues that Cosby has failed to state a claim for unjust enrichment.

To state a breach of contract claim under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa., 895 A.2d 595, 600 (Pa. Super. Ct. 2006) (quoting Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

The Court will address each motion in turn.

A.   Kivitz and Troiani's Motion

Kivitz and Troiani argue that Cosby has failed to make out breach of contract claims against them because their actions did not breach any obligations set forth in the CSA. Cosby alleges several distinct types of violations, each of which is discussed below.

1.   Release of the Deposition Transcript

First, Cosby alleges that Kivitz and Troiani "either instructed the Court Reporter to release" the deposition

transcript, or "knowingly failed to use [their] best efforts to ensure that [their] vendors comply with the confidentiality provisions of the 2006 Confidential Settlement Agreement." Compl. ¶ 55. According to the Complaint, the CSA explicitly requires such best efforts.[7] Id. ¶ 56.

Kivitz and Troiani contend that this allegation is baseless because (1) they played no role in the release of the deposition transcript and (2) KLW was not their vendor. The first argument, of course, raises questions of fact that cannot be answered at this stage. See DeBenedictis, 492 F.3d at 215 (requiring courts to "accept as true all allegations in the complaint" at the motion to dismiss stage). As to the second argument, though Kivitz and Troiani urge the Court to find as a matter of law that the term "vendor" could not include court reporters, they have provided no legal authority stating as much.[8] Indeed, the question is whether KLW was Kivitz and

_____

[7]    For its part, KLW has claimed that it released the deposition transcript upon request from "various news sources" due to its "understanding" of the Court's order unsealing documents in Constand v. Cosby. Compl. ¶¶ 52-54.

[8]    They do cite several sources in support of this argument, Kivitz & Troiani's Mot. Dismiss 14, ECF No. 32, but none are dispositive. The National Court Reporters Association Code of Professional Ethics instructs members to "[b]e fair and impartial toward each participant in all aspects of reported proceedings, and always offer to provide comparable services to all parties in a proceeding." Code of Prof'l Ethics ¶ 1 (Nat'l Court Reporters Ass'n), available at www.ncra.org/ codeofprofessionalethics#ncracode. Federal Rule of Civil

Troiani's "vendor" as contemplated by the CSA. In addition to issues of contractual interpretation, this question raises factual issues, such as the particular arrangements between KLW and the parties. Accordingly, the Court will decline to find at this stage that KLW could not have been Kivitz and Troiani's vendor, and thus will deny Kivitz and Troiani's motion to dismiss as to claims involving the release of the deposition transcript.

### 2.   Cooperation with Law Enforcement

Next, Cosby alleges that Kivitz and Troiani breached the CSA by voluntarily cooperating with law enforcement agents who were conducting a criminal investigation of Cosby's conduct, because the parties to the CSA agreed "not to disclose to anyone, via written or oral communication or by disclosing a document, in private or public, any aspect of this LITIGATION, including the events or allegations upon which the LITIGATION was based[,] . . . the information that they learned during the

---

Procedure 28(c) says that "[a] deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action." Fed. R. Civ. P. 28(c). And in Churchill v. Star Enterprises, No. 97-3527, 1998 WL 254080 (E.D. Pa. Apr. 17. 1998), in the course of reviewing contested costs, the court noted that costs from a court reporter were "billed . . . by an independent third party," id. at *10. None of these sources stand for the unqualified proposition that a court reporter cannot be considered a "vendor," even as defined by parties to a contract.

criminal investigation of COSBY or discovery in the content of
COSBY's and CONSTAND's depositions in the LITIGATION, and
information about COSBY and/or CONSTAND gathered by their
agents." Compl. ¶ 45.

Kivitz and Troiani argue that if this provision of the
contract prevented them from voluntarily cooperating with a
criminal investigation, it is unenforceable because it violates
public policy.

"Where the enforcement of private agreements would be
violative of [public] policy, it is the obligation of courts to
refrain from such exertions of judicial power." Hurd v. Hodge,
334 U.S. 24, 34-35 (1948). "To declare a contract unenforceable
on public policy grounds, . . . courts must first determine that
the public policy at issue is 'well defined and dominant.'"
Fomby-Denson v. Dep't of Army, 247 F.3d 1366, 1375 (Fed. Cir.
2001) (quoting W.R. Grace & Co. v. Local Union 759, 461 U.S.
757, 766 (1983)). Here, the question is whether there is a
robust public policy against the enforcement of contracts that
purport to prevent individuals from voluntarily providing
information concerning alleged criminal conduct to law
enforcement authorities.

Fomby-Denson, from the Federal Circuit, appears to be
the leading case on this subject. In that case, the Army had
terminated an employee (Fomby-Denson) for, among other things,

forging an officer's signature on an official form. Id. at 1369.
Fomby-Denson appealed her termination and lodged complaints with
the EEOC. Id. As a result, Fomby-Denson and the Army entered
into a settlement agreement, in which the Army agreed to cancel
its termination of Fomby-Denson and to pay her a sizable lump
sum. Id. The settlement agreement stated that its terms "shall
not be publicized or divulged in any manner, except as is
reasonably necessary to administer its terms." Id. Thereafter,
the Army referred the allegations of Fomby-Denson's forgery to
local "law enforcement authorities for investigation and
possible prosecution." Id. The Army's correspondence with those
authorities disclosed some of the terms of the settlement
agreement, including the amount paid to Fomby-Denson. Id. Fomby-
Denson subsequently attempted to enforce the settlement
agreement, arguing that the Army had breached various
provisions, including the confidentiality provisions, by
referring her conduct to law enforcement authorities. Id. at
1371-72.

The Federal Circuit held that enforcing such an
agreement would violate a well-defined and dominant public
policy: "[I]t is a long-standing principle of general contract
law that courts will not enforce contracts that purport to bar a
party . . . from reporting another party's alleged misconduct to
law enforcement authorities for investigation and possible

prosecution." Id. at 1377-78. The court drew this conclusion

from a number of Supreme Court, federal circuit court cases, and

state court cases. See, e.g., Branzburg v. Hayes, 408 U.S. 665,

696-97 (stating that "it is obvious that agreements to conceal

information relevant to commission of crime have very little to

recommend them from the standpoint of public policy" and

concluding that "[i]t is apparent . . . that concealment of

crime and agreements to do so are not looked upon with favor");

Lachman v. Sperry-Sun Well Surveying Co., 457 F.2d 850, 853

(10th Cir. 1972) ("It is public policy in Oklahoma and

everywhere to encourage the disclosure of criminal activity.");

Baker v. Citizens Bank of Guntersville, 208 So. 2d 601, 606

(Ala. 1968) ("[A] contract based upon a promise or agreement to

conceal or keep secret a crime which has been committed is

opposed to public policy and offensive to the law."). The court

also looked to secondary authorities. See, e.g., Restatement

(First) of Contracts § 548(1) (1932) ("A bargain in which either

a promised performance or the consideration for a promise is

concealing or compounding a crime or alleged crime is

illegal."); 6A Arthur L. Corbin, Corbin on Contracts § 1421, at

355-56 (1962) ("A bargain the purpose of which is the stifling

of a prosecution is in all cases contrary to public policy and

illegal even though it may not itself be a crime. This is

true . . . whether the prosecution has or has not been started

at the time the bargain is made. Bargains of this kind are in various forms, including promises not to prosecute or not to give evidence to the prosecuting officers . . . .").[9]

Cosby argues that the principle identified in Fomby-Denson does not apply to voluntary disclosures to law enforcement officers, but rather only to disclosures elicited through a subpoena.[10] He cites no authorities in support of this proposition.[11] Indeed, to the contrary, Fomby-Denson itself

---

[9]     The only relevant Third Circuit case identified by either party is Woodson v. Runyon, 537 F. App'x 28 (3d Cir. 2013) (nonprecedential). In Woodson, the Third Circuit declined to enforce an agreement in which one party promised not to repeat anything the other had said, because the agreement would have required the first party to commit perjury when called to testify against the second party before a grand jury.

To be sure, Woodson focuses on the fact that enforcement of the contract would have required a party to perjure himself, not that it would have prohibited him from providing information to law enforcement officers. But, notably, the Woodson court did not draw a distinction between voluntary and forced testimony, saying that the witness "was either subpoenaed or invited to testify as [the defendant's] witness." 537 F. App'x at 29. If the witness was simply asked to testify, then conceivably he could have said no, and in that way complied with his contractual obligations. In other words, it is not clear that perjury was the only way the witness could avoid breaching the contract – yet the Third Circuit still declined to enforce the contract.

[10]     Cosby concedes that the CSA does not prohibit testimony at court proceedings. Pl.'s Opp. Kivitz & Troiani's Mot. Dismiss 21, ECF No. 37.

[11]     He does cite several cases in support of the claim that agreements prohibiting parties "from further pursuing the allegations by speaking with anyone voluntarily about them . . . are routinely found enforceable." Pl.'s Opp. Kivitz & Troiani' Mot. Dismiss 20. But none of those cases concerned disclosures

involved voluntary disclosures – more voluntary than the case at hand, even, because in Fomby-Denson, the Army proactively offered information to local authorities, while in this case, the disclosures were in response to requests from law enforcement authorities. And the public policy reasons underlying the Fomby-Denson principle, and outlined extensively in that case, apply equally to voluntary disclosures as to forced disclosures, as there is no reason to conclude that "the reporting of crimes" is necessarily an involuntary activity. 247 F.3d at 1376.

Accordingly, to the extent that the CSA purports to prevent its signatories from voluntarily disclosing information about crimes to law enforcement authorities, it is unenforceable as against public policy.[12] The Court will thus grant the motion to dismiss the breach of contract claims against Kivitz and

---

to law enforcement authorities, which is the issue here, so they are inapplicable to this case.

[12]    For this reason, the Court need not further consider Cosby's allegations that Kivitz and Troiani failed to follow the CSA's stated procedure for proper disclosures to law enforcement authorities. That procedure is relevant only to the question whether the provision was breached, and not whether the provision is enforceable if it was breached. In other words, if the provision cannot be enforced, it does not matter whether any parties failed to abide by its terms – at least for the purposes of the breach of contract claims at hand, although that question may become relevant to the unjust enrichment claim against Andrea Constand, see infra n. 14.

Troiani to the extent that the claims are based on their
disclosures to law enforcement officials.

### 3. Castor Complaint and Open Letter

Finally, Cosby alleges that Troiani and Kivitz
breached the CSA by (1) representing Andrea Constand in her suit
against Bruce Castor, and (2) sending an "open letter to Bruce
Castor" to the Philadelphia Inquirer, which printed the letter.

Kivitz and Troiani argue that these allegations do not
suffice to state breach of contract claims because the CSA does
not prohibit its signatories from making public statements on
issues that are already matters of public record – and that
nothing contained in either Constand's complaint against Castor
or their own open letter to Castor revealed information that had
previously been concealed to the public.

It is true that the Court can, at this stage,
determine whether the CSA contains an unambiguous exception to
the general prohibition against disclosures. See KDH Elec. Sys.,
Inc. v. Curtis Tech. Ltd., 826 F. Supp. 2d 782, 796-97 (E.D. Pa.
2011) (noting, at the motion to dismiss stage, that courts can
interpret unambiguous contracts as a matter of law, and that
"ambiguity in the agreement is sufficient to overcome [a] motion
to dismiss"). But even assuming for the purposes of argument
that the CSA does contain that exception – such that the parties

may comment on the underlying events so long as their statements reveal nothing that was not already a matter of public record – several factual matters remain, including what exactly was in the public record and whether the statements at issue addressed only subjects already in that public record. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1424-25 (3d Cir. 1997) (when ruling on a motion to dismiss, a district court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based"). Thus, the Court will deny the motion to dismiss the breach of contract claims involving the Castor complaint and open letter.

* * *

Accordingly, the Court will grant Kivitz and Troiani's motion to dismiss the claims against them with respect to the allegations involving disclosures to law enforcement officials, but deny the motion as to the remainder of the claims.

B.    American Media's Motion

Cosby also brings a breach of contract claim against American Media for articles the National Enquirer has published about Cosby since the parties entered into the CSA. American Media contends that this claim should be dismissed because: (1) the articles concerned matters that were already in the public

record, which American Media argues is not prohibited by the CSA, and (2) Cosby breached the contract himself, and thus cannot enforce it.

Neither argument is persuasive. As discussed above, even assuming that American Media's interpretation of the contract is correct, questions of fact remain, such as what was already in the public record when the <u>National Enquirer</u> published articles about Cosby. Cosby's own actions, and the timing thereof, are also matters of fact; arguments concerning who said what when, as it were, are premature at this stage.

Accordingly, the Court will deny American Media's motion to dismiss.

## C. <u>Andrea and Gianna Constand's Motion</u>

Finally, Andrea Constand and Gianna Constand move to dismiss the breach of contract claims against each of them and the unjust enrichment claim against Andrea.

### 1. <u>Gianna Constand</u>

As counsel for Cosby stated at the hearing on this motion to dismiss, the only allegation against Gianna Constand is that she violated the CSA by voluntarily participating in a re-interview with the law enforcement agents who were investigating Cosby's criminal case. For the reasons discussed above, if this conduct were to constitute a breach of the CSA,

the provision at issue is unenforceable. Accordingly, the Court will grant the motion to dismiss the breach of contract claim against Gianna Constand and dismiss her as a defendant in this case.

2.   Andrea Constand

A portion of Cosby's breach of contract claim against Andrea Constand also rests on allegations that she voluntarily provided law enforcement officials with information; the Court will grant her motion to dismiss the breach of contract claim against her to the extent that it involves these allegations.

The remainder of the breach of contract claim against Andrea Constand involves (1) two tweets from 2014, in which she said, "I won't go away, there is a lot more I will say," and, "It's not that everybody just forgot about it, truth is nobody cared"; and (2) an interview she gave to the Toronto Sun.

Constand argues that the tweets cannot form the basis for a breach of contract claim because they do not mention Cosby or the litigation by name.[13] This argument is unavailing because, of course, a statement can be a reference to an individual or

---

[13]   She also contends, using the same argument articulated by Kivitz, Troiani, and American Media, that the tweets could not have violated the CSA because they did not reveal any information that was not already in the public record. For the reasons discussed above, this argument raises factual questions that cannot be resolved at this stage.

situation even if it does not explicitly say so. Whether the tweets were in fact references to Cosby – and, if so, whether Constand breached the CSA by tweeting them – are questions to be answered at a later stage.

Regarding the Toronto Sun interview, Constand argues that if her comments to that media outlet constituted a breach of contract, then Cosby breached the contract first because he had previously made similar comments elsewhere in the press. As discussed above, this argument is premature, as Cosby's own actions remain questions of fact at this point. Accordingly, the Court will deny Andrea Constand's motion to dismiss the breach of contract claim against her, except insofar as the claim relies on allegations that she voluntarily disclosed information to law enforcement officers.

In the alternative, Cosby also claims unjust enrichment against Constand, alleging that she received substantial financial benefit from the CSA, which she has now breached. Constand argues that Cosby's unjust enrichment claim should be dismissed for two reasons.

First, she contends that this claim cannot survive because the doctrine of unjust enrichment is inapplicable here. Unjust enrichment is a quasi-contractual claim in which the contract at issue "is implied in law, and 'not an actual contract at all.'" Hershey Foods Corp. v. Ralph Chapek, Inc.,

828 F.2d 989, 998 (3d Cir. 1987) (quoting <u>Ragnar Benson, Inc. v.</u>
<u>Bethel Mart Assocs.</u>, 454 A.2d 599, 603 (Pa. Super. Ct. 1982)).
To sustain such a claim, "the claimant must show that the party
against whom recovery is sought either wrongfully secured or
passively received a benefit that would unconscionable for the
party to retain without compensating the provider." <u>Id.</u> at 999.
In Pennsylvania, the doctrine is unjust enrichment is
"inapplicable when the relationship between the parties is
founded on a written agreement or express contract." <u>Benefit Tr.</u>
<u>Life Ins. Co. v. Union Nat'l Bank</u>, 776 F.2d 1174, 1177 (3d Cir.
1985) (quoting <u>Schott v. Westinghouse Elec. Corp.</u>, 259 A.2d 443,
448 (Pa. 1969)). Constand argues that because there is a written
contract between the parties in this case, unjust enrichment
cannot apply under the circumstances here.

However, as Cosby points out, if a contract is
unenforceable in whole or in part – as Constand alleges is the
case here – unjust enrichment may apply. <u>See, e.g.</u>, <u>Fish Net,</u>
<u>Inc. v. ProfitCenter Software, Inc.</u>, No. 09-5466, 2011 WL
1235204, at *10 (E.D. Pa. Mar. 31, 2011) (dismissing an unjust
enrichment claim because "[n]either party claims that the
contract was either invalid or unenforceable"); <u>Armstrong World</u>
<u>Indus., Inc. v. Robert Levin Carpet Co.</u>, No. 98-5884, 1999 WL
387329, at *7 (E.D. Pa. May 20, 1999) (noting that a claim for
unjust enrichment could have survived if either party alleged

that the contract was unenforceable); Shulman v. Cont'l Bank,
513 F. Supp. 979, 986 (E.D. Pa. 1981) ("[I]f an agreement is
unenforceable, in some circumstances a party may be entitled to
restitution from another who has been unjustly enriched at that
party's expense.").

Thus, because the enforceability of part of the CSA is
disputed, this argument does not provide a basis for dismissing
the unjust enrichment claim.[14]

Second, Constand argues that Cosby cannot recover
under an unjust enrichment claim because, under the doctrine of
unclean hands, Cosby himself breached the contract first. Again,
this argument turns on factual matters involving Cosby's own

---

[14]     Recovery under an unjust enrichment claim may
ultimately be limited to whatever portion of the contract is
found to be unenforceable. See Curtin v. Star Editorial, Inc., 2
F. Supp. 2d 670, 675 (E.D. Pa. 1998) ("Recognizing that this
action is at a very early stage, we will permit plaintiff to
proceed at this time with the claim of unjust enrichment, but
only as it relates to the [provision that may be
unenforceable].").

     Additionally, the Court notes that, like Kivitz and
Troiani, Constand contends that her cooperation with law
enforcement officers did not in fact violate the CSA. While that
issue is irrelevant to the Court's partial dismissal of Cosby's
breach of contract claims, it is relevant in the unjust
enrichment context – because it may be that Constand could not
have been unjustly enriched if she did not even breach the
unenforceable provision in the first place. However, the issue
whether Constand complied with the CSA's mechanism for
disclosing information to law enforcement officer raises factual
questions that cannot be answered at this stage.

21

conduct and the timing thereof, and thus is premature at the motion to dismiss stage.

The Court will therefore deny the motion to dismiss Cosby's unjust enrichment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the motions to dismiss the portions of Cosby's claims alleging that various defendants breached the CSA by voluntarily disclosing information to law enforcement officers, but will deny the remainder of the motions to dismiss. An appropriate order follows.